IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 2:06cr298-WKW |
| | ) | |
| REGINALD LASHAWN SAWYER | ) | |

## SENTENCING MEMORANDUM

### FACTS

On December 13, 2006, a five-count indictment was filed against Mr. Sawyer. The two most serious charges in the indictment are: possession with the intent to distribute more than 50 grams of cocaine base, and possession of a firearm in furtherance of a drug trafficking offense. On July 31, 2007, Mr. Sawyer pled guilty to all counts of the indictment, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).

### DISCUSSION

In light of the Supreme Court's opinion in *United States v. Booker*, the sentencing court's determination of the appropriate sentence is no longer confined to a determination of the appropriate offense level, criminal history, and availability of authorized downward departures. Rather, under the post-*Booker* discretionary sentencing regime, the advisory United States Sentencing Guidelines (hereinafter "Guidelines") range is only one factor among several that this Court is required to consider in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). It is the sentencing statute, not the Sentencing Commission, which

now governs the sentencing process.

The overriding principle and basic mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). In determining the sentence minimally sufficient to comply with the purposes of sentencing, the court must consider several factors, which include, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational and vocational training. 18 U.S.C. §3553(a)(1) and (2). Moreover, under 18 U.S.C. §3661, *"no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (emphasis added).

In fashioning an appropriate sentence for Mr. Sawyer, he suggests that the Court should take particular note of several important factors. First, the Court should consider that Mr. Sawyer has never before been to prison. Mr. Sawyer was previously convicted of Possession of Marijuana in the 1st Degree by the State of Alabama, a conviction for which Mr. Sawyer received a suspended sentence and probation. Ironically, Mr. Sawyer would have been better served in that case by a sentence that included some prison time. The sentence that Mr. Sawyer received in that case failed to acquaint Mr. Sawyer with the onerous conditions of incarceration. Now that Mr. Sawyer has been locked up in the

Montgomery City Jail for more than one year on this case, he is intimately familiar with the deprivations of liberty and freedom that accompany such incarceration; he has now learned an invaluable lesson that he previously had not.  Further, Mr. Sawyer is paying an incredibly high price for his prior conviction in this case.  Because the United States filed for a sentence enhancement under 21 U.S.C. §851, Mr. Sawyer's prior conviction–which was *not* a drug trafficking conviction–has resulted in the statutory mandatory minimum sentence getting doubled from ten years to twenty years, which is an extremely harsh result for someone who has never before been incarcerated.

Second, this Court should give great weight to the fact that Mr. Sawyer cooperated with the United States and provided agents with a wealth of information that substantially assisted their investigations of others who are engaged in the distribution of illegal drugs. Surely one of the surest signs that a criminal defendant involved in the illegal drug trade has repented of his conduct and wishes to pursue a law-abiding life is not only his willingness to abandon his misguided loyalties to his fellow participants in that drug trade, but, further, to substantially assist authorities in investigating and prosecuting his former colleagues.

Third, and most importantly, the Court should consider the grossly disparate punishment that the Guidelines impose for offenses involving the distribution of crack cocaine vis-a-vis powder cocaine. The "100-to-1 crack versus powder" disparity is well known in federal sentencing practice.  The United States Sentencing Commission recently amended the Guidelines to reduce the base offense levels for offenses involving crack cocaine–one of the very few amendments that the Commission has made retroactive.  Recent

news reports reflect that Congress is seriously considering legislation that would further address this rather glaring injustice. In the meantime, however, it is entirely appropriate for this Court to consider the crack-versus-powder disparity in fashioning a reasonable sentence in this case, as this very issue was recently definitively settled by the United States Supreme Court in *United States v. Kimbrough*, 128 S.Ct. 558 (2007). *Kimbrough* is remarkably similar to Mr. Sawyer's case, as the two most significant charges in *Kimbrough* were the same two charges that are the most significant in Mr. Sawyer's case: possession with intent to distribute more than 50 grams of cocaine base and possession of a firearm in furtherance of a drug trafficking offense.

In *Kimbrough*, the Guidelines range was 168 to 210 months for the drug charge and 60 months for the gun charge, with a total Guidelines range of 228 to 270 months. *Id.* at 565.

> A sentence in this range, in the District Court's judgment, would have been "greater than necessary" to accomplish the purposes of sentencing . . . . [T]he court took into account the "nature and circumstances" of the offense and Kimbrough's "history and characteristics." The court also commented that the case exemplified the "disproportionate and unjust effect that crack cocaine guidelines have in sentencing." In this regard, the court contrasted Kimbrough's Guidelines range of 228 to 270 months with the range that would have applied had he been accountable for an equivalent amount of powder cocaine: 97 to 106 months, inclusive of the 5-year mandatory minimum for the firearm charge . . . . Concluding that the statutory minimum sentence was "clearly long enough" to accomplish the objectives listed in §3553(a), the court sentenced Kimbrough to 15 years, or 180 months, in prison plus 5 years of supervised release. (citations omitted).

*Id*. The Fourth Circuit vacated the sentence, holding that a sentence "outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." *Id*.

In overruling the Fourth Circuit, the Supreme Court considered the following history surrounding the Guidelines and crack cocaine offenses.

Although the Commission [initially] used the 100-to-1 ratio to define base offense levels for all crack and powder offenses, it later determined that the crack/powder sentencing disparity is generally unwarranted. Based on additional research and experience with the 100-to-1 ratio, the Commission concluded that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act." 2002 Report 91. In a series of reports, the Commission identified three problems with the crack/powder disparity.

First, the Commission reported, the 100-to-1 ratio rested on assumptions about "the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support." *Ibid.;* see United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007), available at http:// www. ussc. gov/ r_ congress/ cocaine2007.pdf (hereinafter 2007 Report) (ratio Congress embedded in the statute far "overstate[s]" both "the relative harmfulness" of crack cocaine, and the "seriousness of most crack cocaine offenses"). For example, the Commission found that crack is associated with "significantly less trafficking-related violence . . . than previously assumed." 2002 Report 100. It also observed that "the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure." *Id.,* at 94. The Commission furthermore noted that "the epidemic of crack cocaine use by youth never materialized to the extent feared." *Id.,* at 96.

Second, the Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers. See 1995 Report 66-67. But the 100-to-1 ratio can lead to the "anomalous" result that "retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced." *Id.,* at 174.

Finally, the Commission stated that the crack/powder sentencing differential "fosters disrespect for and lack of confidence in the criminal justice system" because of a "widely-held perception" that it "promotes unwarranted disparity based on race." 2002 Report 103. Approximately 85 percent of defendants convicted of crack offenses in federal court are black;

> thus the severe sentences required by the 100-to-1 ratio are imposed "primarily upon black offenders." *Ibid.*
>
> Despite these observations, the Commission's most recent reports do not urge identical treatment of crack and powder cocaine. In the Commission's view, "some differential in the quantity-based penalties" for the two drugs is warranted, *id.,* at 102, because crack is more addictive than powder, crack offenses are more likely to involve weapons or bodily injury, and crack distribution is associated with higher levels of crime, see *id.,* at 93-94, 101-102. But the 100-to-1 crack/powder ratio, the Commission concluded, significantly overstates the differences between the two forms of the drug. Accordingly, the Commission recommended that the ratio be "substantially" reduced. *Id.,* at viii.

*Id*. at 568.  The Court continued with a thorough review of the history and policy considerations surrounding the crack-versus-powder disparity, and concluded, "Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve §3553(a)'s purposes . . . . *Id*. at 575.

Even with a reduction in his Guidelines range based on his substantial assistance to authorities, Mr. Sawyer's Guidelines-range minimum sentence stands at a staggering 17 years and seven months, or 211 months (151 months for the drug charge, plus 60 months on the gun charge, to run consecutively).  Notably, because the adjustment for Mr. Sawyer's acceptance of responsibility is applied before considering the mandatory minimum sentence of twenty years, in actuality he receives no reduction at all in his sentence for his acceptance of responsibility.  If the United States had not filed for an enhanced punishment under 21 U.S.C. §851, Mr. Sawyer's Guidelines sentencing range for his possession of the crack cocaine would be 70 to 87 months (base offense level of 32, minus three levels for

acceptance of responsibility, minus three levels for his substantial assistance, for a total offense level of 26), and his total Guidelines-range minimum sentence would then be 130 months. In other words, without the filing of that enhancement, Mr. Sawyer's minimum Guidelines sentence would be reduced by a substantial 81 months.

Even more disturbing is that if Mr. Sawyer were sentenced for a like amount of powder cocaine, he wouldn't have faced even a five-year mandatory minimum sentence–in fact, he wouldn't have faced a mandatory minimum sentence *at all*. If he were sentenced for possession with intent to distribute a like amount of powder cocaine, his minimum Guidelines sentence for the drug charge would be only 12 to 18months (base offense level of 18, minus three levels for acceptance of responsibility, minus three levels for his substantial assistance, for a total offense level of 12), and his total Guidelines-range minimum sentence would then be 72 months.

The ultimate question that this Court must answer is this: how much prison time is enough for a defendant who has never been to prison and who is convicted for the first time of a drug trafficking offense? Surely in excess of 17 years is far "greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). Due entirely to the disparity between crack cocaine and powder cocaine mandatory minimums, Mr. Sawyer faces a statutory minimum of 20 years for his possession with the intent to distribute cocaine base, while he would have faced no statutory minimum at all if he were charged with possession with the intent to distribute powder cocaine. It is only Because Mr. Sawyer cooperated with Government authorities his Guidelines sentence falls below 240 months.

Even with a reduction under §5K1.1, the resulting disparity in his Guidelines minimum, 151 months for cocaine base versus 12 months for cocaine powder, is truly stunning. In other words, Mr. Sawyer faces a Guidelines sentence that is *twelve and a half times* higher than if his drug charge involved powder cocaine, rather than cocaine base. To validate such a disparity by sentencing Mr. Sawyer to the Guidelines minimum sentence would not "promote respect for the law;" quite to the contrary, such a sentence would promote contempt for the law. By virtually any objective standard a sentence of 211 months would simply not be reasonable when considering all the facts of this case, and Mr. Sawyer prays that this Court will impose a sentence that is far, far less.

      Dated this 14th day of February, 2008.

                                                  Respectfully submitted,

                                                  s/ Donnie W. Bethel
                                                  DONNIE W. BETHEL
                                                  Assistant Federal Defender
                                                  201 Monroe Street, Suite 407
                                                  Montgomery, Alabama 36104
                                                  Phone: (334) 834-2099
                                                  Fax: (334) 834-0353
                                                  E-mail:don_bethel@fd.org
                                                  IN Bar Code: 14773-49

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No.: 2:06cr298-WKW** |
| ) | |
| **REGINALD LASHAWN SAWYER** ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Verne H. Speirs, Assistant United States Attorney.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49